# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Gary Charles Rigdon,
     Petitioner,


      vs.                        Case No. 1:08cv716
                                   (Dlott, C.J.; Wehrman, M.J.)

Ohio Adult Parole Authority,[1]
     Respondent.


_____

## REPORT AND RECOMMENDATION
_____

       Petitioner, who apparently is currently in state custody under the supervision of the Ohio Adult Parole Authority, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 3).  Initially, the case was administratively stayed and terminated on the Court's active docket pending petitioner's exhaustion of his Ohio remedies.  (Docs. 23-24; *see also* Docs. 13, 16, 21).  The case was reinstated on December 3, 2009, and respondent was ordered to file a return of writ in answer to the petition.  (Docs. 25, 27).  Respondent filed a return of writ with exhibits as ordered on January 12, 2010, and petitioner filed a

_____

[1]In the petition, petitioner properly named the Warden of Chillicothe Correctional Institution (CCI) as respondent, because petitioner was incarcerated at CCI at that time.  (*See* Doc. 3).  It appears, however, from petitioner's most recent pleading filed on April 5, 2010 that he is no longer incarcerated; petitioner states that he was released from prison on February 11, 2010 when the trial court granted his motion filed on October 19, 2009 for judicial release after a hearing on the motion.  (*See* Doc. 32, p. 13; *see also* Doc. 29, Ex. 68).  According to the Court's docket records, petitioner recently formally informed the Court of the change in his address by way of telephone on June 14, 2010.   The undersigned assumes that because petitioner's six-year sentence imposed in May 2006 has not expired, petitioner remains under the supervision of the Ohio Adult Parole Authority (OAPA).  Therefore, the caption of the case is hereby changed to reflect that the OAPA, as the entity that currently has custody of petitioner, is the proper party respondent.  *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

"traverse" in reply to the return of writ on April 5, 2010.  (Docs. 29, 32).  It, therefore, appears that the matter is now ripe for final disposition.

## Background

On January 3, 2006, the Warren County, Ohio, grand jury returned an indictment charging petitioner with two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A); a firearm specification was attached to each count. (Doc. 13, Ex. 1).

The matter proceeded to trial before a jury, which found petitioner guilty as charged.  (*Id.,* Ex. 3).  After the jury was discharged, petitioner filed a motion for acquittal under Ohio R. Crim. P. 29 and a motion for new trial, arguing that the evidence was insufficient to support his convictions.  (*Id.,* Exs. 4-5).  The trial court denied the motions on the record prior to sentencing at a hearing held on May 24, 2006.  (*Id.,* May 24, 2006 Tr. 6-7).  Petitioner was sentenced to consecutive terms of imprisonment totaling six (6) years, which consisted of a three-year prison term for felonious assault as charged in Count One and a three-year prison term on the attached firearm specification, "of which 3 years ... is a mandatory term."[2]  (*Id.,* Ex. 7).

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District.  (*Id.,* Ex. 8).  With the assistance of new counsel for appeal purposes, petitioner filed a brief raising the following assignments of error:

> 1.  The trial court erred in permitting testimony in evidence regarding the gun without showing a chain of custody.

> 2.  The trial court erred when it denied appellant's motion for acquittal.

> 3.  The judgments of conviction are contrary to law in that there was insufficient evidence to establish each and every element of each offense with the specifications beyond a reasonable doubt.

---

[2]No sentence was imposed for the felonious assault charged in Count Two with specification because Count Two was merged with Count One for sentencing purposes as "allied offenses of similar import."  (*See* Doc. 13, Ex. 7).

4.  Appellant's conviction is against the manifest weight of the evidence.

5.  Appellant was denied the effective assistance of counsel [based on trial counsel's refusal of a lesser offense jury instruction; failure to object to the State's evidence "as to exhibit 28-the gun;" and failure to choose between a "self defense" or "accident" theory of defense until after the first day of the two-day trial had concluded].

6.  The trial court erred when it sentenced appellant to more than a minimum sentence.

(*Id.,* Ex. 9).[3]

On June 11, 2007, the Ohio Court of Appeals issued an Opinion and Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment.  (*Id.,* Ex. 14).  In its Opinion, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[4] regarding the incident leading to petitioner's indictment and conviction:

....The charges were filed following an altercation on November 28, 2005, involving appellant, his wife, Shari Rigdon (Mrs. Rigdon), Mrs. Rigdon's ex-husband, Greg Little (Little), and an acquaintance, Greg Kelly (Kelly).

On the evening in question, appellant and Mrs. Rigdon got into an argument while dining at a restaurant.  After the argument became heated, appellant left the restaurant while Mrs. Rigdon stayed behind, indicating that she would find her own way home.  Little and Kelly

---

[3]Petitioner subsequently filed a *pro se* motion for leave to file a supplemental brief to add an assignment of error challenging the jury verdict forms.  (Doc. 13, Ex. 12).  The Ohio Court of Appeals denied the motion on March 23, 2007.  (*Id.,* Ex. 13).

[4]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  In this case, because petitioner has neither argued nor presented evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, such findings are presumed to be correct.

were also at the restaurant that evening and witnessed the argument between appellant and Mrs. Rigdon.  After appellant left, and noticing Mrs. Rigdon appeared upset, the two men joined Mrs. Rigdon for drinks and offered to drive her home.

At some point that evening while Mrs. Rigdon was briefly away from the table, Kelly answered a call from appellant on Mrs. Rigdon's cellular telephone.  He and appellant began to argue heatedly, during which Kelly allegedly made threatening remarks to appellant. Following this conversation, appellant contacted his son, Adam, and asked for a shotgun.  Appellant also contacted his son, William, along with his nephew, Daniel, requesting they come to the residence.

Later that evening after leaving the restaurant, Kelly, Little and Mrs. Rigdon drove to Kelly's house for another drink before continuing on to Mrs. Rigdon's house.  When they arrived at her house, Mrs. Rigdon unsuccessfully attempted to enter the residence through the garage door, which appellant had disabled.  She and Kelly then walked to the front entrance of the house where Mrs. Rigdon began to knock on the front door.  Because the Rigdons had a civil protection order in place against Little at the time, Little remained in the car while Mrs. Rigdon and Kelly approached the residence.

Appellant's son, William, responded to the knock on the door but refused to allow Mrs. Rigdon inside.  He then went to get appellant, who picked up the loaded shotgun he had obtained earlier that evening, and opened the door.  Upon opening the door, an argument ensued between appellant and Mrs. Rigdon.  At some point during the argument, appellant "racked" the shotgun in an effort to scare Kelly. Appellant then struck Kelly in the face with the shotgun, and Kelly stumbled backward on the porch as a result.  Appellant's nephew, Daniel, proceeded towards Kelly and began fighting him.  Little, who was still in the car parked in front of the Rigdons' residence at the time, observed Kelly engaged in the fight and decided to assist him.

As he approached Kelly, Little first encountered Daniel, who pushed him to the ground.  Appellant, armed with the shotgun, then began to move towards Little as Little was attempting to get off the ground.  At some point as appellant approached Little, the shotgun discharged and

struck Little in the back of his shoulder.  Appellant re-racked the gun after the shot was fired.  He then proceeded towards Kelly and joined in the fight with him.  After the fight had ended, Mrs. Rigdon gathered Little and Kelly and began to drive them to the hospital.  Police stopped the vehicle shortly thereafter, and emergency technicians transported Little, Kelly and Mrs. Rigdon to the hospital.

A jury trial was held on May 8 and 9, 2006, during which appellant testified the shooting was accidental, and that the shotgun discharged as a result of hitting the ground when he slipped on a patch of mud in his front yard.  After hearing this testimony, as well as that of several other witnesses and investigating officers, the jury returned a guilty verdict to both counts of felonious assault....

(*Id.,* pp. 1-3) (footnotes omitted).

With the assistance of his appellate counsel, petitioner filed a timely appeal to the Supreme Court of Ohio from the direct appeal decision.[5]  (*Id.,* Exs. 19-20). In his memorandum in support of jurisdiction, petitioner asserted two propositions of law:

1.  Whether or not a Defendant has had effective assistance of counsel when his attorney fails to place critical objections on the record; fails to raise issues about chain of custody in a case in which a gun is part of the crime; tells the Court he has no defense after the trial has started; and refuses an instruction on a lesser offense.

2.  Whether the Prosecution has engaged in selective prosecution

---

[5]Before appealing to the state supreme court, petitioner's appellate counsel filed a motion for reconsideration with the Ohio Court of Appeals based on "new evidence ... that would have clearly impacted the chain of custody of the gun."  (Doc. 13, Ex. 15).  Specifically, petitioner alleged that "State Trooper Jeremy Wickman saw and heard Little and Kelly trying to break into the Rigdon home;" that Wickman had given a recorded statement to the police regarding the events he witnessed, which was never produced to the defense; and that the non-disclosed statement "would have had the tendency to impeach the credibility of the ... [p]olice officers and the firearm testing they claimed to have performed."  (*See id.*).  On July 6, 2007, the Court of Appeals struck the motion for reconsideration as untimely.  (*Id.,* Ex. 16).  Thereafter, petitioner filed a motion for reconsideration of the July 6, 2007 ruling, which was also denied.  (*See id.,* Exs. 17-18).

> when it fails to prosecute a party who is injured as a result of violating
> a Civil Protective Order and was driving in violation of law and under
> the influence of alcohol when he goes to Appellant's home in
> violation of that Order.

(*Id.,* Ex. 20).

On October 31, 2007, the Supreme Court of Ohio declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 22).

In the meantime, on December 28, 2006, while petitioner's direct appeal was pending before the Ohio Court of Appeals, petitioner's appellate counsel filed on petitioner's behalf a motion for new trial with the trial court based on "newly discovered evidence" in the form of undisclosed eyewitness testimony by Ohio State Trooper Jeremy Wickman, who apparently was a neighbor of the Rigdons. (*Id.,* Ex. 23). In an affidavit attached to the motion, Wickman averred that, while at home on November 28, 2005, he "heard an altercation and a loud boom around midnight;" that he went out to his porch after hearing the "loud boom," and observed several men involved in an altercation," as well as a man trying to force his way into the Rigdons' home; and that he "observed this same individual leave in a SUV with a blonde female and another male subject." (*Id.,* Affidavit of Jeremy Wickman). Wickman further averred that the three individuals in the SUV appeared to be intoxicated with no "life threatening injuries;" that he called 911 twice that night "for local authorities to respond;" that he spoke with Sergeant Lacey of the Warren County Sheriff's Department at the scene; and that he had provided a recorded statement to John Wetzel of the Lebanon Police Department regarding his observations. (*Id.*).

After holding an evidentiary hearing on January 24, 2007, the trial court denied petitioner's motion for new trial. (*See id.,* Ex. 28 & January 24, 2007 Hearing Tr.). Upon consideration of all the evidence, including Wickman's testimony, the court found in pertinent part as follows:

> ....Trooper Wickman testified that he called 911 twice that evening
> after being alerted to what was obviously the single gunshot fired by
> the defendant here. Trooper Wickman saw or heard nothing of
> evidentiary value prior to the gunshot being fired. Defendant claims
> that the Lebanon Police Department either through sloppy work or out

of a misguided desire to help Greg Kell[]y, who was involved in the brawl that took place here[,] some how concealed Trooper Wickman's identity from the defense.  The Court agrees that the failure to either tape record Trooper Wickman's statement or at least to obtain a written statement from him is unacceptable police work.  However, the evidence makes clear that Trooper Wickman knew nothing that could assist the defense here.

The defendant chose to defend the case on a theory of accidental shooting.  Trooper Wickman saw or heard nothing until after the shot was already fired.  His testimony therefore could in no way support the defense claim of an accidental shooting.  Present counsel wants the Court to determine that trial counsel was ineffective in not utilizing Trooper Wickman as a witness.  The prosecution provided to the original defense counsel the 911 tape recording prior to trial, wherein Trooper Wickman clearly identified himself and his address.  Therefore, there is no newly discovered evidence existing here.

Further, the Court finds that this was not an example of ineffective assistance of counsel.  Trial counsel was on the horns of a dilemma.  To get an instruction on self-defense the defendant had to admit that he knowingly fired the shot that injured the victim Greg Little.  Neither Trooper Wickman nor any of the multiple other witnesses that the defense called to testify at trial ever indicated that Little tried to enter the home.  All of the eyewitnesses consistently said that Kelly tried to enter the home.  Unfortunately for the defense, Little was the man that was shot....  Calling Wickman as a witness would add absolutely nothing to the evidence that the defense already had in its possession from all of the eyewitnesses including the defendant, his wife, son and nephew who were outside and in close proximity to where the shooting occurred.

Additionally, the Court finds that even though Wickman had nothing favorable to add to the defense, that the defense could have, or should have discovered his existence even without the prosecution revealing the 911 taped call.  This defendant personally was out on bail pending trial.  Both he, his wife and adult children could have easily canvassed the neighborhood to ask the neighbors did you see or hear anything

the night of this shooting. One neighbor was called by the
prosecution. Shawn Partin testified as to what he saw and heard by
virtue of living in close proximity to the defendant's home. It does
not take much of a sleuth to realize that other neighbors may have
seen or heard something of evidentiary value yet no effort apparently
was ever made to knock on doors to locate such witnesses.

In summary, Criminal Rule 16 does not require the prosecution to
disclose the names of witnesses they do not intend to call. The
prosecution had already chosen not to use Trooper Wickman since he
added nothing to the evidence that was produced at trial by the other
eyewitnesses. The Court expressly finds that there was no violation of
the *Brady* requirement that the prosecution turn over this information
as evidence favorable to the defense since it was neither favorable nor
unavailable to the defendant prior to trial.

(*Id.*, Ex. 28).

With the assistance of his appellate counsel, petitioner appealed the trial
court's decision to the Ohio Court of Appeals, Twelfth Appellate District, asserting
as the sole assignment of error that the "trial court abused its discretion when
overruling Rigdon's motion for new trial." (*Id.*, Exs. 29-30). On February 4,
2008, the Court of Appeals overruled the assignment of error and affirmed the trial
court's judgment. (*Id.*, Ex. 32). In so ruling, the court reasoned:

....According to the record, Ohio State Trooper Jeremy Wickman's
identity was disclosed to appellant during discovery when the state
provided notice of the 911 call that Wickman made. Therefore,
appellant has not demonstrated that this evidence has been discovered
since the trial or that it could not, in the exercise of due diligence,
have been discovered before the trial.... Moreover, appellant's motion
for a new trial is untimely, as it was filed more than 120 days after the
judgment entry of conviction and sentence, and appellant has failed to
provide clear and convincing evidence that he was unavoidably
prevented from discovering this evidence within the 120-day period.
Crim.R. 33(B).

(*Id.*).

8

Petitioner filed a timely *pro se* appeal to the Supreme Court of Ohio, raising the following propositions of law:

> 1.  The Trial Court erred in overruling Rigdon's Motion for a New Trial on the basis of newly discovered evidence where the newly discovered evidence raises questions as to the existence of entirely new issues.

> 2.  The Trial Co[u]rt erred in overruling Rigdon's Motion for a New Trial on the basis of the State's failure to disclose evidence in violation of Rigdon's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and in violation of Rule 16, Ohio Rules of Criminal Procedure.

(*Id.,* Exs. 35-36).  On June 18, 2008, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 38).

On May 8, 2008, while his appeal from the denial of his new trial motion was pending before the state supreme court, petitioner filed a *pro se* application to reopen the direct appeal with the Ohio Court of Appeals, Twelfth Appellate District.  (*Id.,* Ex. 39).  In the application filed pursuant to Ohio R. App. P. 26(B), petitioner alleged that his appellate counsel was ineffective because he did not argue that trial counsel was ineffective for failing (1) to "conduct basic rudimentary investigation into the witness, Ohio State Trooper, Jeremy ... Wickman;" (2) to raise a claim of prosecutorial misconduct stemming from the withholding of Wickman's statement to the police; (3) to "obtain expert testimony from an expert gunsmith which would have supported appellant's self-defense defense;" and (4) to object to the verdict forms.  (*Id.*).

On July 1, 2008, the Ohio Court of Appeals denied petitioner's application for reopening after addressing the merits of petitioner's ineffective assistance of counsel claims.  (*Id.,* Ex. 42).

Petitioner timely appealed to the Supreme Court of Ohio, asserting in his memorandum in support of jurisdiction the following propositions of law:

> 1.  Ohio State prisoner's right to effective assistance of counsel ... and Ohio State prisoner's right to due process of law ...  require[] the State

to act in accord with the due process clause ..., when a state prisoner has complied with the "State's Corrective Process" in attempting to have issues resolved based on the merits of the claims raised.

2.  The State of Ohio's corrective process should be a process that is "swift and simple and easily invoked..." ..., when a state prisoner utilizes a rule that purports to "govern procedure in appeals to court of appeals from the trial courts of record in Ohio."...  Then to have tainted procedures employed against him by State agents, i.e., police, prosecutor and judges which denied review of Sixth Amendment ineffective assistance of counsel.

3.  Prosecutorial misconduct raised under ineffective assistance of appellate counsel claim which effectively denies Fifth, Sixth and Fourteenth Amendment provisions under the United States Constitution requires review in order to provide "due process of law" pursuant to the Fourteenth Amendment....

(*Id.,* Exs. 45-46).  On October 15, 2008, the state supreme court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 48).

Finally, on September 10, 2008, while his appeal from the denial of his reopening application was pending before the state supreme court, petitioner filed a *pro se* petition for post-conviction relief with the Warren County Common Pleas Court.  (*Id.,* Ex. 49).  Petitioner alleged the following claims of error:

1.  Petitioner's convictions and sentences are void or voidable because trial counsel rendered ineffective assistance because he failed to ascertain and then contest Lebanon Police Department and Warren County Prosecutor's office collusion to abnegate petitioner's "right to effective assistance of counsel" under the Sixth Amendment....

2.  Petitioner's convictions and sentences are void or voidable because trial counsel rendered ineffective assistance when he failed to present petitioner's self-defense defense.  Petitioner contends that the Second Amendment protects his right to possess a firearm ... and to use that arm for traditionally lawful purposes, such as self-defense within the home....

10

3.  Petitioner's convictions and sentences are void or voidable because of fundamental misconduct attributable to the Prosecution and State that violated petitioner's due process rights and denied him a fair trial.

4.  Petitioner's convictions and sentences are void or voidable because "subsequent to the period prescribed in division (A)(1) of section 2923.21 of the revised code..., the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in petitioner's situation, and the petition asserts a claim based on that right."

5.  Petitioner's convictions and sentences are void or voidable because of prosecutorial misconduct attributable to the Warren County Prosecutor's office which has infringed on Petitioner's right to due process of the law and to a fair trial.

6.  Petitioner's convictions and sentences are void or voidable because Ohio's post-conviction procedures do not provide me an adequate corrective process in violation of the [C]onstitution....

7.  Petitioner's convictions and sentences are void or voidable because of the cumulative effect of the errors complained of in the fore mentioned causes for relief which served to deprive petitioner of a fair trial.

(*Id.*).

On October 6, 2008, the trial court dismissed the petition as untimely, based on the finding that petitioner had "failed to establish any justification for not filing this petition within ... 180 days [after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction, as] mandated by § 2953.21 O.R.C." (*Id.*, Ex. 51).  With the assistance of new counsel, petitioner appealed this ruling to the Ohio Court of Appeals, Twelfth Appellate District, which affirmed the trial court's judgment on June 6, 2009.[6]  (*Id.,* Exs. 52-53; Doc. 29, Ex. 59).  Petitioner's counsel sought leave to appeal further to the Supreme

---

[6]On July 22, 2009, the court of appeals also denied petitioner's motion for reconsideration, which was filed by petitioner's counsel on June 17, 2009. (*See* Doc. 29, Exs. 60, 63).

Court of Ohio, which declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question" on October 14, 2009.  (Doc. 29, Exs. 64-65, 67).

Petitioner submitted the instant habeas corpus petition for filing in October 2008, soon after the trial court denied his application for state post-conviction relief. He alleges eight grounds for relief:

**Ground One:**  Whether or not a Defendant has had effective assistance of counsel when his attorney fails to place critical objections on the record; fails to raise issues about chain of custody in a case in which a gun is part of the crime; tells the Court he has no defense after the trial has started; and refuses an instruction of a lesser offense.

**Ground Two:**  Whether the Prosecution has engaged in selective prosecution when it fails to prosecute a party who is injured as a result of violating a Civil Protection Order and was driving in violation of law and under the influence of alcohol when he goes to Petitioner's home in violation of the Order.

**Ground Three:**  The trial court erred in overruling Rigdon's Motion for a New Trial on the basis of newly discovered evidence where the newly discovered evidence raises questions as to the existence of entirely new issues.

**Ground Four:**  The trial court erred in overruling Petitioner's Motion for a New Trial on the basis of the State's failure to disclose evidence in violation of Petitioner's rights under the Fifth, Sixth and Fourteenth Amendments ..., and in violation of Rule 16, Ohio Rules of Criminal Procedure.

**Ground Five:**  Ohio State Prisoner's right to "effective assistance of counsel" ... and Ohio State Prisoner's right to "due process of law" ... require the State to act "in accord with due process clause" ... when a State Prisoner has complied with the "State's Corrective Process" in attempting to have issues resolved based on the merits of the claims raised.

**Ground Six:**  The State of Ohio's corrective process should be a

process that is "swift and simple and easily invoked ..." ..., when a state prisoner utilizes a rule that purports to "govern procedure in appeals to court of appeals from the trial courts of record in Ohio."... The[n] to have tainted procedures employed against him by State agents, i.e., police, prosecutor and judges which denies review of Sixth Amendment Ineffective Assistance of Appellate Counsel claim.

**Ground Seven:** Prosecutorial misconduct raised under ineffective assistance of appellate counsel claim[,] which effectively denies Fifth, Sixth and Fourteenth Amendment provisions under the United States Constitution[,] requires review in order to provide "due process of law" pursuant to the Fourteenth Amendment of the United States Constitution and analogous provisions of the State of Ohio's Constitution.

**Ground Eight:** Petitioner was denied his right to "effective assistance of [trial] counsel" in violation of the Sixth and Fourteenth Amendment[]s to the United States Constitution.

(Doc. 3, pp. 6A-6B, 7A, 9A-9B, 10A-10B, 13-14, 16-17, 19-20, 22-23).

In September 2009, the petition was administratively stayed and terminated on the Court's active docket while petitioner pursued post-conviction relief in the Ohio courts; the case was reinstated on December 3, 2009 upon petitioner's motion at the conclusion of the state post-conviction proceedings. (*See* Docs. 23-24, 27).

In the return of writ filed in response to the reinstated petition, respondent contends that the ineffective assistance of trial counsel claims alleged in Grounds One and Eight "are either procedurally defaulted or lacking in merit;" that petitioner has waived the claim of "selective prosecution" alleged in Ground Two as a result of his procedural default in the state courts; that the claims alleged in Grounds Three and Four challenging the denial of his motion for new trial are not cognizable and any underlying constitutional claim under *Brady v. Maryland,* 373 U.S. 83 (1963), "is procedurally defaulted and lacking in merit;" and that Grounds Five through Seven, which essentially challenge the procedure adopted in Ohio R. App. P. 26(B) for consideration of ineffective assistance of appellate counsel claims, are not cognizable in this federal habeas proceeding. (Doc. 29, Brief, pp. 18-29).

## OPINION

### A.  Petitioner Has Waived The "Selective Prosecution" Claim Alleged In Ground Two Due To His Procedural Default In Failing To Raise It As An Assignment Of Error On Direct Appeal To The Ohio Court Of Appeals

In Ground Two of the petition, petitioner alleges that he is entitled to relief because the prosecutor engaged in "selective prosecution" by prosecuting only petitioner while failing to press criminal charges against Kelly, who tried to break into petitioner's home, or the shooting victim Little, who drove to petitioner's residence "under the influence of alcohol" and in violation of a civil protection order.[7]  (Doc. 3, p. 7A).  Respondent contends in the return of writ that petitioner has waived this ground for relief, which was raised only in petitioner's memorandum in support of jurisdiction to the Supreme Court of Ohio in the direct review proceedings.  (*See* Doc. 29, p. 24).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  The claims must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If a petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's

---

[7]Petitioner also alleges as factual support for his claim of "selective prosecution" that the prosecutor failed to disclose and destroyed favorable eyewitness testimony provided by Ohio State Trooper Jeremy Wickman.  (*See* Doc. 3, p. 7A).  These additional allegations form the basis of petitioner's prosecutorial misconduct claim underlying Grounds Three and Four of the petition.  Because the allegations more appropriately pertain to the claims alleged in Grounds Three and Four, they will be addressed herein when the undersigned considers those particular grounds for relief.

highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner failed to fairly present his claim of "selective prosecution" to the Ohio courts, because although he asserted it once as a "proposition of law" when he sought leave to appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' June 11, 2007 direct appeal decision, he did not raise it as an "assignment of error" in the initial appeal to the Ohio Court of Appeals. (*See* Doc. 13, Exs. 9, 20). Petitioner procedurally defaulted the claim alleged in Ground Two by failing to present it to the intermediate appellate court before raising it to the state supreme court for consideration, because the Supreme Court of Ohio lacks jurisdiction to consider such a claim if it was not asserted below. *See Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983); *see also* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966). Therefore, petitioner has waived the "selective prosecution" claim alleged in Ground Two for purposes of federal habeas review unless he can show cause and prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Here, no showing has been made that failure to consider the claim will result in a fundamental miscarriage of justice or, in other words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 319-21 (1995); *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir.) (*per curiam*), *cert.*

*denied,* 543 U.S. 989 (2004); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005).

Moreover, petitioner has never presented any justification as cause for his procedural default of the claim alleged in Ground Two.  Although it is well-settled that appellate counsel's ineffectiveness may constitute cause for a procedural default occurring in an appeal as of right to the Ohio Court of Appeals, cause cannot be established if the ineffective assistance of appellate counsel claim was itself procedurally defaulted.  *See Murray v. Carrier,* 477 U.S. 478, 488-89 (1986); *see also Edwards v. Carpenter,* 529 U.S. 446, 451-53 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 667-68 (6th Cir.) (*per curiam*), *cert. denied,* 546 U.S. 1017 (2005).

Here, petitioner did challenge his appellate counsel's effectiveness in the application for reopening of the direct appeal that he filed with the Ohio Court of Appeals in May 2008.  (*See* Doc. 13, Ex. 39).  However, although petitioner alleged in the reopening application that his appellate counsel was ineffective in failing to raise certain ineffective assistance of trial counsel claims on direct appeal, he did not further allege that his appellate counsel was ineffective in failing to raise the specific claim alleged in Ground Two of "selective prosecution."  (*See id.*). Because petitioner never argued to the state courts that his appellate counsel should have raised a "selective prosecution" claim on direct appeal, he procedurally defaulted any such ineffective assistance of appellate counsel claim and thus cannot assert it as cause for his procedural default of Ground Two in the instant action.

Accordingly, in sum, in the absence of a showing of cause for petitioner's procedural default in the state courts or that a fundamental miscarriage of justice will occur if the defaulted claim is not considered herein, the Court concludes that petitioner has waived the claim of "selective prosecution" alleged in Ground Two of the petition.  The claim, which is barred from review by this Court, is subject to dismissal with prejudice.

**B.  Petitioner Is Not Entitled To  Relief Based On The Claims In Grounds Three And Four Challenging The Denial Of His Motion For New Trial On The Basis Of "Newly Discovered Evidence" Withheld By The Prosecution**

In Grounds Three and Four of the petition, petitioner essentially alleges that the trial court erred when it overruled his motion for new trial based on "newly

discovered evidence" previously withheld and "ultimately destroyed" by the prosecutor. (*See* Doc. 3, pp. 9A-9B, 10A-10B). The "newly discovered evidence" cited by petitioner in support of his motion for new trial was the eyewitness testimony of Ohio State Trooper Jeremy Wickman; petitioner claimed that Wickman's observations, which were purportedly recorded by the police, would have been helpful to the defense in deciding whether to pursue a self-defense theory of defense in addition to or in lieu of the defense that was pursued of an accidental shooting. (*See id.*; *see also* Doc. 13, Ex. 23).

As an initial matter, as respondent has argued in the return of writ (*see* Doc. 29, Brief, p. 25), to the extent petitioner claims in Grounds Three and Four that the trial court erred in its application of Ohio R. Crim. P. 33 or otherwise abused its discretion in denying his motion for new trial, his allegations concern issues of state-law only which are not cognizable in this federal habeas proceeding. *See Pudelski v. Wilson*, 576 F.3d 595, 610-11 (6th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)) (holding that the petitioner's claim that the "trial court abused its discretion and misapplied Ohio law when denying his motion for new trial based on newly discovered evidence" was "clearly premised on issues of state law," which are "not subject to habeas review"), *cert. denied*, __ S.Ct. __, No. 09-877, 2010 WL 265888, 78 USLW 3448 (U.S. May 17, 2010).

To the extent that petitioner also claims in Grounds Three and Four that the prosecutor withheld and destroyed material exculpatory evidence, he alleges error of constitutional dimension which may be considered on federal habeas review.

As respondent has argued in the return of writ (*see* Doc. 29, Brief, pp. 25-26), it appears that petitioner procedurally defaulted the claim of constitutional error because he did not file a timely motion for new trial within 120 days after the judgment entry of conviction and sentence as required by Ohio R. Crim. P. 33. It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed*, 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *see also McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985).

17

Such a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. If the state court clearly and expressly relies on a procedural bar as an adequate and independent state ground for its decision, federal habeas review is foreclosed even if the state court also rules in the alternative on the merits of the federal claim. *See, e.g., Sochor v. Florida,* 504 U.S. 527, 533 (1992) (and cases cited therein); *Harris,* 489 U.S. at 264 n.10; *Coe v. Bell,* 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied,* 528 U.S. 1039 (1999). In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In this case, the Ohio Court of Appeals was the last state court to issue a reasoned opinion in proceedings held on petitioner's new trial motion, in which the underlying constitutional claim of prosecutorial misconduct was raised. Although the state appellate court briefly addressed the merits of petitioner's claim challenging the trial court's decision to deny the motion, it also clearly and expressly relied on petitioner's procedural default to the extent it ruled that the motion was untimely, and petitioner had not met his burden of showing that he was "unavoidably prevented from discovering [the new evidence] within the 120-day period" as required by Ohio R. Crim. P. 33(B). (*See* Doc. 29, Ex. 32). The Supreme Court of Ohio's later unexplained entry summarily dismissing petitioner's appeal "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default. *See Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

However, petitioner has alleged ineffective assistance of trial and appellate counsel claims in the instant petition, which may also constitute "cause" for his procedural default of the underlying constitutional claim raised in his motion for new trial. *See, e.g., Murray,* 477 U.S. at 488. Because it appears from the record that petitioner exhausted the ineffective assistance of appellate counsel argument in the state courts by way of his application for reopening of the direct appeal, and because it appears that such claim was not procedurally defaulted and was considered on the merits by the state courts in denying the reopening application,

18

the Court will proceed to address the merits of the prosecutorial misconduct claim underlying petitioner's motion for new trial.

Although the state appellate court relied on a state procedural bar in affirming the trial court's decision to deny petitioner's motion for new trial, to the extent the state courts alternatively ruled against petitioner on the merits of his constitutional claim, petitioner is not entitled to relief unless the state courts' adjudication of the claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998); *see also Brooks v. Bagley,* 513 F.3d 618, 624 (6th Cir. 2008) (holding that the deferential standard set forth in 28 U.S.C. § 2254(d) applies in cases where the state court rejected the constitutional claim both on state procedural grounds and on the merits of the federal claim), *cert. denied,* 129 S.Ct. 1316 (2009).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.  An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.  A legal principle is "clearly established" for purposes of habeas corpus review  "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 130

S. Ct. 1171, 1173 (2010).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

It was well-settled by the time petitioner filed his motion for new trial that the prosecution is required by the Fourteenth Amendment's Due Process Clause to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *see also United States v. Bagley,* 473 U.S. 667, 674 (1985). *Brady* did not create a broad constitutional right of discovery in a criminal case, but rather is premised on "the avoidance of an unfair trial to the accused," *Brady,* 373 U.S. at 87. *Bagley,* 473 U.S. at 675 & n.6-7. Therefore, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 675.

To establish a *Brady* violation, it must be shown that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the suppressed evidence was material to guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); s*ee also Strickler v. Greene,* 527 U.S. 263, 281-82 (1999); *Brady,* 373 U.S. at 87; *Bowling v. Parker,* 138 F.Supp.2d 821, 880 (E.D. Ky. 2001), *aff'd,* 344 F.3d 487 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004). Evidence is "material" within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

been different." *Bagley,* 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109-10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (citing *Agurs,* 427 U.S. at 112 n.20), *cert. denied,* 504 U.S. 930 (1992).

Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley,* 473 U.S. at 676. On the other hand, evidence that tends to inculpate the defendant or that is neither facially exculpatory nor impeaching does not fall under *Brady*'s proscription. *United States v. Simpson,* 901 F.2d 1223, 1228 (5th Cir. 1990); *United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir. 1988); *cf. Agurs,* 427 U.S. at 112 n.20; *Phillip,* 948 F.2d at 250. Furthermore, because "*Brady* is concerned only with cases in which the government possesses information which the defendant does not," *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000) (quoting *United States v. Mullins,* 22 F.3d 1365, 1371 (6th Cir. 1994)), "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Id.* (citing *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir. 1998), *cert. denied,* 528 U.S. 842 (1999)); *see also Doan v. Carter,* 548 F.3d 449, 460 (6th Cir. 2008), *cert. denied,* 130 S.Ct. 366 (2009).

Finally, to the extent petitioner alleges that the State destroyed or otherwise failed to preserve a recorded statement that Wickman made to the police, it is well-established under Supreme Court precedents that a defendant's due process rights are violated when the State either fails to preserve material exculpatory evidence or, in bad faith, fails to preserve potentially useful evidence. *See Arizona v. Youngblood,* 488 U.S. 51 (1988); *California v. Trombetta,* 467 U.S. 485 (1984); *see also Hall v. Moore,* No. 1:02cv34, 2008 WL 565788, at *3, *27 (S.D. Ohio Feb. 29, 2008) (Spiegel, S.J.; Black, M.J.) (unpublished), *aff'd,* 339 Fed.Appx. 576 (6th Cir. July 31, 2009) (not published in Federal Reporter).

In *Trombetta,* the Court held that due process is violated, regardless of whether or not the government acted in bad faith, when the government fails to

preserve material exculpatory evidence within the meaning of *Brady*.  *Trombetta,*
467 U.S. at 488-89; *see also Youngblood,* 488 U.S. at 57; *United States v. Wright,*
260 F.3d 568, 570-71 (6th Cir. 2001).  To establish a due process violation under
*Trombetta*, it must be shown that the non-preserved evidence "both possess[ed] an
exculpatory value that was apparent before the evidence was destroyed, and [was]
of such a nature that the defendant would be unable to obtain comparable evidence
by other reasonably available means."  *Trombetta,* 467 U.S. at 489; *see also
Wright,* 260 F.3d at 570-71.

        In *Youngblood*, 488 U.S. at 57, the Court held that "the Due Process Clause
requires a different result when [dealing] with the failure of the State to preserve
evidentiary material of which no more can be said than that it could have been
subjected to tests, the results of which might have exonerated the defendant."  In
such a case, involving the failure "to preserve evidence whose exculpatory value is
indeterminate and only 'potentially useful' to the defendant," *United States v.
Jobson,* 102 F.3d 214, 218 (6th Cir. 1996), the defendant must demonstrate that the
State acted in bad faith in failing to preserve the evidence in addition to showing
that the evidence both possessed an exculpatory value that was apparent before its
destruction and was of such a nature that the defendant would not be able to obtain
comparable evidence by other reasonably available means.  *Youngblood,* 488 U.S.
at 57.

        Here, neither the trial court nor the Ohio appellate courts cited or otherwise
identified the applicable legal standards established by the Supreme Court in *Brady*
and *Youngblood/Trombetta* in addressing petitioner's claim of prosecutorial
misconduct.  The trial court determined, however, that although the Lebanon
Police Department's failure to record or preserve Wickman's statements during a
police interview amounted to "unacceptable police work,"  no constitutional
violation occurred because the testimony purportedly withheld and destroyed by
the State was neither favorable to the defense nor unavailable before trial to the
defendant.  (*See* Doc. 13, Ex. 28, pp. 2, 4-5).  The Ohio Court of Appeals further
emphasized on appeal that because Wickman's identity as the 911-caller had been
disclosed to petitioner during discovery, his testimony was discoverable by
petitioner prior to the trial.  (*Id.,* Ex. 32).  Upon review of the record, the
undersigned agrees with the Ohio courts' findings and concludes that petitioner has
not demonstrated that any withholding or destruction of evidence provided by
Wickman to the police rose to the level of a due process violation.

        First, as the Ohio courts recognized, petitioner is unable to establish that he

was denied due process because it is clear from the record that he could have obtained the non-disclosed information directly from Wickman, who was his neighbor.  Petitioner was on notice that Wickman was a potential eyewitness to the incident giving rise to the criminal charges, because as the state courts found, Wickman's identity as the individual who placed the two 911 calls on the night in question was disclosed to the defense during discovery.  Petitioner was not prohibited from contacting Wickman as part of the defense investigation.  Because it thus appears that petitioner could have obtained the information on his own from another source and "by other reasonable available means," he is unable to demonstrate a violation of *Brady* or *Youngblood/Trombetta* occurred in this case. *Cf. Doan,* 548 F.3d at 460; *Coe,* 161 F.3d at 344; *Youngblood,* 488 U.S. at 57; *Trombetta*, 467 U.S. at 489; *Wright,* 260 F.3d at 570-71.

Second, even assuming, as the trial court concluded, that the police erred in failing to either record or preserve recorded statements that Wickman made when interviewed at the police station soon after the incident, the "suppressed" testimony did not constitute material exculpatory evidence within the meaning of *Brady*. Petitioner was not charged with any criminal offenses involving Greg Kelly, but instead was charged and tried only for shooting his wife's ex-husband, Greg Little. (*See* Doc. 13, Trial Tr. 9, 13, 447).  As the trial court found, Wickman, who was lying in bed watching television when he heard "a commotion, immediately followed by a large boom, which [he] thought was a gunshot," did not observe anything until *after* the shooting occurred.  (*See id.*, January 24, 2007 Hearing Tr. 5, 18).  Wickman expressly stated that "[t]here were no further gunshots" fired that night.  (*Id.,* Tr. 18).  Therefore, whatever Wickman observed from his porch after-the-fact would not have shed any light on whether or not the shooting was accidental or an act of self-defense.

At the evidentiary hearing held on petitioner's motion for new trial, Wickman testified that the distance between his home and petitioner's residence was 316 feet, described as "roughly [the distance of] a football field."  (*Id.,* Tr. 13). When he went out to his porch after hearing the gunshot, he observed "what appeared to be a drunken fight" involving four to five men in petitioner's front yard; that the situation did not appear "life threatening;" that he went back into his house to call 911; and that when he returned to the porch after making the call, he observed "a man trying to force his way into the house and ... heard somebody with a really deep voice, screaming, you're not coming into my house."  (*Id.*, Tr. 7). Wickman further testified that the men proceeded to fist fight, which was when he first saw a "blond female ... coming down the front yard" and into the middle of

the street pleading for "somebody [to] call the police." (*Id.*, Tr. 7-8). Wickman stated that at that time, "the man that was trying to force his way in the house and the blond female got into the SUV" and started to drive away; Wickman then made a second 911 call to inform the police that the "parties involved in the fight are leaving and they're in a black SUV." (*Id.,* Tr. 8). Wickman stated that he told the Lebanon police "virtually the same thing" regarding "what [he] saw and heard" that night. (*Id.,* Tr. 20-21).

It appears from this testimony Wickman did not even see Little or notice that anyone had been shot.[8] At best, Wickman's testimony would have supported the defense position that Kelly tried to obtain entrance into petitioner's residence the night of the shooting, and arguably would have cast doubt on Kelly's credibility to the extent Kelly testified that he did not do so. (*See id.*, Trial Tr. 86-87). Kelly, who was involved in a scuffle with petitioner's son when Little was shot, only heard the gunshot and did not observe the actual shooting. (*Id.,* Tr. 90-91). Therefore, to the extent Wickman's testimony could have served to undermine Kelly's credibility, any such benefit to the defense would not have extended to, and thus would not have impacted the jury in determining, the crucial issues as to whether petitioner's admitted shooting of Little was either accidental or an act of self-defense.

Petitioner argues in his "traverse" brief in reply to the return of writ that Wickman's "suppressed" testimony also would have impeached the police officers' trial testimony pertaining to "the firearm testing they claimed to have performed." (Doc. 32, p. 21). This contention is simply too speculative to satisfy the *Brady* materiality standard. *Cf. Agurs,* 427 U.S. at 109-10. Contrary to petitioner's suggestion, although the police may have erred in failing to record or preserve Wickman's statements when Wickman was interviewed at the police station, there is no evidence in the record even remotely suggesting that the police engaged in "evidence tampering." Wickman did not observe the shooting or the gun that was used in the shooting. His testimony, therefore, was not even

---

[8]Although Wickman averred in the affidavit attached to petitioner's motion for new trial that he saw a "blond female," the man who tried to enter petitioner's home and "another male subject" leave the scene in an SUV, Wickman testified at the subsequent evidentiary hearing that he noticed only a "blond female" and the man who had tried to enter the residence leave the scene. (*See* Doc. 13, Ex. 23, Affidavit of Jeremy Wickman). All of the eyewitnesses who were called to testify for the defense at trial, including petitioner and petitioner's wife, stated that the individual who attempted to enter petitioner's house that night was Kelly, *not* Little. (*See id.*, Trial Tr. 138, 244-45, 307-09, 348, 354, 392-93).

potentially useful to the defense for the purpose of establishing, as support for either defense theory, that the gun was broken.

Upon review of the record, the Court is convinced that if Wickman had been called to testify on petitioner's behalf at trial, his testimony would have had little, if any, impact on the jury's verdict. Indeed, it is likely that the jury would have given more weight and credence to the testimony of another disinterested eyewitness, petitioner's next-door neighbor, Shawn Partin, who observed the altercation at the same time as Wickman from a much closer vantage point. (*See* Doc. 13, Trial Tr. 113-17). Therefore, the State did not withhold or fail to preserve material exculpatory evidence within the meaning of *Brady* and *Trombetta*. Moreover, to the extent petitioner claims Wickman's testimony was "potentially useful" to the defense, petitioner has not met his burden of showing that the State acted in bad faith in failing to preserve the statements made by Wickman to the police; that the exculpatory value of the non-preserved evidence was apparent to the police; or that petitioner would not have been able to obtain Wickman's testimony "by other reasonably available means." *See Youngblood,* 488 U.S. at 57.

Accordingly, in sum, petitioner is not entitled to habeas relief based on his claims in Grounds Three and Four of the petition challenging the trial court's denial of his motion for new trial. Any claim that the trial court abused its discretion or misapplied Ohio law in ruling on the motion for new trial is not cognizable in this proceeding. Furthermore, to the extent that petitioner also alleges a constitutional claim which may be reviewed on the merits herein, he has not demonstrated that the State's alleged failure to disclose or preserve the statements made by Wickman in a police interview deprived petitioner of a fair trial or otherwise amounted to a violation of clearly-established federal law as enunciated by the Supreme Court in the *Brady* and *Youngblood/Trombetta* and their progeny.

### C.  Petitioner Is Not Entitled To Relief Based On The Claims Alleged In Grounds Five Through Seven Challenging The Reopening Proceedings Or On Any Underlying Ineffective Assistance Of Appellate Counsel Claim

Although Grounds Five through Seven of the petition are difficult to decipher, it appears that petitioner is essentially claiming that the state courts failed to provide an adequate "corrective process" for review of the ineffective assistance of appellate counsel claims that were raised in his application for reopening of the

direct appeal under Ohio R. App. P. 26(B). (*See* Doc. 3, pp. 13-14, 16-17, 19-20). As respondent has argued in the return of writ (Doc. 29, Brief, pp. 28-29), these allegations do not give rise to a cognizable claim subject to review in this federal habeas proceeding.

The Sixth Circuit has held that in accordance with Ohio's long-standing practice, reopening applications under Ohio R. App. P. 26(B), which fall "beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court," *Douglas v. California*, 372 U.S. 353, 356 (1963), are "part of the [State's] collateral, post-conviction process rather than direct review." *See, e.g., Lopez v. Wilson*, 426 F.3d 339, 344 n.3, 351-57 (6th Cir. 2005) (*en banc*) (and numerous state cases cited therein), *cert. denied*, 547 U.S. 1099 (2006); *see also Morgan v. Eads*, 818 N.E.2d 1157, 1160-61 (Ohio 2004) (and state cases cited therein). The writ of habeas corpus is not the proper means by which prisoners can challenge errors or deficiencies in state post-conviction proceedings, such as the one involved here, which address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration. *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986); *see also Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002), *cert. denied,* 540 U.S. 853 (2003); *Alley v. Bell,* 307 F.3d 380, 386-87 (6th Cir. 2002), *cert. denied,* 540 U.S. 839 (2003) & 541 U.S. 963 (2004). Petitioner's allegations of error occurring in the reopening proceeding involve such "collateral matters," because they do not affect or relate to petitioner's underlying conviction and sentence.

Therefore, to the extent petitioner claims in Grounds Five through Seven of the petition that he was not provided adequate "corrective process" by the Ohio Court of Appeals in ruling on his application for reopening, he has not stated a cognizable constitutional claim that may be redressed in this proceeding.

In addition, petitioner has not demonstrated that he is entitled to habeas relief to the extent he further contends in Grounds Five through Seven that the Ohio Court of Appeals should have granted his application for reopening based on the merits of the ineffective assistance of appellate counsel claims that were raised in the application.

To establish that he was denied his Sixth Amendment right to the effective assistance of counsel on direct appeal, petitioner must demonstrate both (1) his appellate attorney made such serious errors that he was not functioning as the

"counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense.  *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must show that appellate counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688. Judicial scrutiny must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred.  *Id.* at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance.  *Id.*

Appellate counsel is not constitutionally ineffective under this prong merely because he declines to raise a non-frivolous issue on appeal that was requested by the defendant.  *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir. 1991) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983) (holding that an "indigent defendant [does not have] a constitutional right to compel appointed counsel to press nonfrivolous points [on appeal] requested by the client")); *see also Johnico v. Chrones,* 187 Fed.Appx. 701, 703 (9th Cir. June 9, 2006) (not published in Federal Reporter) ("Appellate counsel has no duty to raise every single issue requested by a defendant."), *cert. denied,* 549 U.S. 1037 (2006).  As the Supreme Court stated in *Barnes,* 463 U.S. at 754:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy....  Nothing in the Constitution or our interpretation of that document requires such a standard.

"Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001), *cert. denied,* 535 U.S. 1031 (2002).  It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal;  however, "[g]enerally, only when ignored issues are

27

clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 Fed.Appx. 375, 379 (6th Cir. Aug. 30, 2004) (not published in Federal Reporter), *cert. denied,* 543 U.S. 1160 (2005).

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different.  *See Strickland,* 466 U.S. at 694.  Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance.  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *Id*. at 697.

In this case, petitioner alleged in his application for reopening that his appellate counsel was ineffective because he did not raise certain ineffective assistance of trial counsel claims on direct appeal.  First, petitioner contended that a claim should have been asserted challenging trial counsel's failure to investigate Ohio State Trooper Jeremy Wickman as a possible defense witness or to raise a claim of prosecutorial misconduct based on the withholding of Wickman's statements to the police. (Doc. 13, Ex. 39, pp. 5-6).  However, as the Ohio Court of Appeals found in rejecting the ineffective assistance of appellate counsel claim, Wickman "did not witness the actual shooting, and only observed what occurred after [petitioner] shot the victim."  (*Id.*, Ex. 42, p. 3).  This Court has concluded in addressing the claims alleged in Grounds Three and Four, that at best, Wickman's testimony would have benefited the defense only minimally, and that if Wickman had been called to testify on petitioner's behalf at trial, his testimony would have had little, if any, impact on the jury's verdict.  Petitioner, therefore, is unable to establish under the second prong of the *Strickland* test that the outome of his appeal would reasonably likely have been different if appellate counsel had asserted the ineffective assistance of trial counsel claim on direct appeal.

Second, petitioner claimed in the reopening application that his appellate counsel should have challenged his trial counsel's failure "to obtain expert

testimony from an expert gunsmith which would have supported [petitioner's] self-defense defense and would have definitively determined that the Lebanon Police Department tampered with the weapon[']s condition at the time following the 'accidental' discharge." (Doc. 13, Ex. 39, p. 6). In support of this claim, petitioner attached a letter dated December 18, 2007 from James R. Eyster of Heritage Gunsmiths in Centerburg, Ohio, to John H. Engle of Cincinnati, Ohio. (*Id.,* Ex. A-5). However, by that time, the direct appeal proceeding had long since concluded, given that the Ohio Court of Appeals had issued its decision affirming the trial court's judgment in June 2007. The direct appeal involves a record-based review only, and appellate counsel was under no duty to conduct any further investigation to discover additional claims based on evidence outside the record. There is no evidence in the present record even remotely suggesting that at the time of petitioner's trial and appeal, counsel should have been aware of the existence of Eyster as a possible defense expert witness. Therefore, petitioner has not demonstrated under the first prong of the *Strickland* test that counsels' challenged conduct fell below an objective standard of reasonableness.

In any event, even assuming counsel should have known about Eyster at the time of petitioner's trial or direct appeal, petitioner has not demonstrated that Eyster would have even qualified to give expert testimony or that he ultimately would have testified in support of the petitioner's version of events as to how the shooting occurred. Petitioner did not provide any evidence regarding Eyster's credentials to testify as an expert. Contrary to petitioner's contentions, Eyster also did not make any statements that would have supported a self-defense defense or the claim that the Lebanon Police Department had engaged in evidence tampering. Moreover, although Eyster summarily opined in the letter that "accidental and/or negligent discharge of the firearm in question cannot be ruled out i[n] the case," it appears that this conclusion was based solely on his evaluation of a police officer's testimony, which Eyster pointed out could be challenged on certain points. Significantly, Eyster noted that further testing needed to be performed because he had not inspected the actual firearm "for condition, function, trigger pull, and safe[t]y selector operation;" nor had he tested the same type of gun in a simulation exercise to determine "actual dynamics of fall and impact of gun on ground." The evidence provided by petitioner to support his claim, therefore, is simply too speculative to establish that his counsel was constitutionally ineffective under *Strickland*.

Finally, petitioner claimed in his reopening application that his appellate counsel should have asserted a claim challenging his trial counsel's failure to

object to the verdict forms.  Here, the verdict forms signed by the jurors reflect that petitioner was found guilty of felonious assault "as he stands charged in the indictment," and as a further finding, that petitioner "had a firearm on or about his person or under his control and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." (Doc. 13, Ex. 3).  The indictment referred to in the verdict forms expressly provided that petitioner was charged with second-degree-felony felonious assault offenses.  (*Id.,* Ex. 1).  The verdict forms, as well as the trial court's subsequent judgment entry reflecting petitioner's convictions for second-degree-felony felonious assault and on the firearm specification (*see id.,* Ex. 7), were adequate to support petitioner's convictions and sentence.  Therefore, petitioner's trial counsel did not act unreasonably in failing to object to the verdict forms, and appellate counsel was not ineffective in failing to challenge trial counsel's representation on that ground.

Accordingly, in sum, to the extent that petitioner claims in Grounds Five through Seven of the petition that he was denied adequate "corrective process" in the state court proceedings on his application for reopening of the appeal, his claims are not cognizable in this federal habeas proceeding.  Moreover, to the extent petitioner contends he is entitled to relief based on the merits of the ineffective assistance of appellate counsel claims that were raised in his reopening application, he has not demonstrated that counsel's challenged conduct amounted to ineffective assistance under *Strickland.*  Therefore, petitioner is not entitled to habeas relief based on the claims alleged in Grounds Five through Seven of the petition.

## D. Petitioner Is Not Entitled To Relief Based On The Ineffective Assistance Of Trial Counsel Claims Alleged In Grounds One and Eight

In Grounds One and Eight of the petition, petitioner alleges that he was denied his Sixth Amendment right to the effective assistance of trial counsel.  Specifically, petitioner claims in Ground One that his trial counsel was ineffective in failing to object "to the admissibility of the firearm when it was shown by State's witnesses that the firearm had been tampered with before it was test fired,"  and in refusing a jury instruction on a lesser offense.  (Doc. 3, p. 6A).  In Ground Eight, petitioner asserts additional claims of ineffectiveness stemming from his trial counsel's failure "to call expert witness[es]," including Ohio State Trooper Wickman; failure to "investigate applicable law and facts relevant to the proper presentation of a complete defense,"

which also should have included a "self-defense" theory of defense; and failure to object to the prosecutor's misconduct. (*Id.,* pp. 22-23). Petitioner further contends in Ground Eight that "the cumulative effect" of the cited errors deprived him of a fair trial. (*Id.,* p. 23).

To establish that his trial counsel's representation was constitutionally ineffective, petitioner must demonstrate both (1) his counsel's challenged conduct fell outside the wide range of reasonable professional assistance; and (2) the result of the trial would "reasonably likely have been different" if not for counsel's errors. *See Strickland,* 466 U.S. at 687-89, 695.

First, as discussed above in addressing petitioner's ineffective assistance of appellate counsel claims alleged in Grounds Five through Seven, petitioner has not demonstrated that his trial counsel was constitutionally ineffective for failing to call an expert witness on firearms, for failing to investigate or call Ohio State Trooper Jeremy Wickman as a defense witness, or for failing to raise a corollary claim of prosecutorial misconduct. Nor has petitioner demonstrated that his trial counsel acted unreasonably to the extent petitioner further alleges in Ground Eight that counsel should have pursued a self-defense theory of defense. The Ohio Court of Appeals determined on direct appeal that "counsel's decision not to raise the theory of self-defense was reasonable trial strategy where appellant's defense centered upon the argument of accident, as the theories of self-defense and accident are inconsistent." (Doc. 13, Ex. 14, pp. 13-14). This Court agrees that it was reasonable for trial counsel not to pursue the self-defense defense, particularly given that in his statement to the police after the incident, petitioner asserted that the shooting was an accident. (*See id.,* Trial Tr. 135). Moreover, no evidence was introduced from any of the witnesses, including petitioner and his wife, indicating that Little tried to enter petitioner's home or made any aggressive moves directed at petitioner, which would have justified the shooting.

Second, petitioner has not demonstrated that he is entitled to relief based on his claim in Ground One that his trial counsel was ineffective in refusing a jury instruction on the lesser offense of aggravated assault. The Ohio Court of Appeals was the only state court to address the merits of this claim, which was raised by petitioner on direct appeal; the court ruled in relevant part as follows:

> With respect to appellant's argument regarding trial counsel's failure to request a lesser-included offense instruction on aggravated assault, we find this decision was part of counsel's trial strategy and proper in light

of appellant's defense of accidental shooting presented at trial.  The defense of accident is a complete defense....  "Ordinarily, when a defendant presents a complete defense as to the substantive elements of the crime *** an instruction on a lesser-included offense is improper."... A defendant is entitled to the lesser-included offense instruction only if, "due to some ambiguity in the state's version of the events involved in the case the jury could have a reasonable doubt regarding the presence of an element required to prove the greater but not the lesser offense."...

Here, an instruction on aggravated assault would have required the jury to find appellant was provoked on the evening in question.  There was no evidence presented at trial, however, to support such a finding.  In fact, appellant testified at trial that the shooting was an accident and that Little neither threatened him nor made any move to injure him at any time during the altercation.  Accordingly, the evidence did not support a lesser-included offense instruction, and requesting such an instruction would have contradicted counsel's defense theory that the shooting was accidental....

(Doc. 13, Ex. 14, pp. 12-13) (footnote and state case citations omitted).[9]

The Ohio appellate court's adjudication of petitioner's ineffective assistance of trial counsel claim neither was contrary to nor involved an unreasonable application of *Strickland*, and was based on a reasonable determination of the facts in light of the evidence presented at trial.  *See* 28 U.S.C. § 2254(d).  Indeed, upon review of the trial transcript, the Court agrees with the state court's determination.  The evidence presented at trial regarding the conduct of Little, who was unarmed and was shot in the *back* of his shoulder while attempting to arise from the ground after having been

_____

[9]In so ruling, the Ohio Court of Appeals noted that, as a matter of Ohio law, aggravated assault as an offense inferior in degree to felonioius assault, includes the "additional mitigating element of serious provocation," and that an instruction on the lesser offense is warranted only in cases "where the defendant produces sufficient evidence of serious provocation."  (Doc. 13, Ex. 14, p. 13 n.5) (citing *State v. Deem*, 533 N.E.2d 294, 299-300 (Ohio 1988)).  Quoting *Deem,* 533 N.E.2d at 300, the court further noted: "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force.  In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the condititions and circumstances that surrounded him at the time."  (*Id.*).

pushed down by petitioner's nephew, does not support a finding of "provocation ... reasonably sufficient to [have] incite[d] or [] arouse[d petitioner] into using deadly force" against Little. *See State v. Deem,* 533 N.E.2d 294, 300 (1988). As the state appellate court found, counsel's refusal of the lesser offense instruction constituted reasonable trial strategy because it was consistent with the defense goal of obtaining a full acquittal on the more serious felonious assault charges, which required the jury to find beyond a reasonable doubt that the defendant acted "knowingly," through evidence tending to show that the shooting was accidental. *Cf. Scott v. Elo,* 302 F.3d 598, 606-07 (6th Cir. 2002) (holding that counsel's failure to request a jury instruction on the lesser-included offense of involuntary manslaughter in a first-degree murder trial based on an accident theory "did not amount to deficient performance," because counsel "made a strategic decision to advance two more plausible defense theories [of intoxication and provocation], rather than present the jury with a different story of how the shooting took place, which could have been easily contradicted by the physical evidence and [the petitioner's] own inconsistent statement"), *cert. denied,* 537 U.S. 1192 (2003); *see also Tinsley v. Million,* 399 F.3d 796, 808 (6th Cir.) (holding that "it was a permissible exercise of trial strategy not to request [lesser-included offense instructions on manslaughter] given that [the] primary line of defense was that [the petitioner] was not the shooter"), *cert. denied,* 546 U.S. 1044 (2005); *Lewis v. Russell,* 42 Fed.Appx. 809, 810-811 (6th Cir. Aug. 16, 2002) (*per curiam*) (not published in Federal Reporter) (holding that "trial counsel's failure to request a jury instruction on the lesser-included offense of voluntary manslaughter constituted a reasonable strategic decision consistent with [the petitioner's] effort to seek a full acquittal on the basis of self-defense").

Third, petitioner has not demonstrated, as alleged in Ground One, that his trial counsel was ineffective for failing to object to the admission of the shotgun used in the shooting on the ground that "[n]o documentation was presented at trial" to establish its "chain of custody ." (*See* Doc. 32, p. 15). The "chain of custody" issue was raised as an assignment of error on direct appeal, but because no objection had been asserted at trial, the claim was reviewed for "plain error" only. (*See* Doc. 13, Ex. 14, p. 4). The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the claim of plain error, made findings of fact, which are presumed correct, *see supra* p. 3 n.4, and ruled in relevant part as follows:

> The chain of custody is part of the authentication and identification requirement for the admission of evidence, set forth in Evid.R. 801.... Although the state bears the burden of establishing a chain of custody, its duty is not absolute.... The state need not negate all possibilities of

33

tampering or substitution, but rather, "establish that it is reasonably certain that substitution, alteration, or tampering did not occur."... Significantly, any deficiencies in the chain of custody of evidence affect the weight of such evidence rather than its admissibility....

Here, Officer White testified at trial regarding his investigation of the altercation. He testified he collected various evidence from the scene, including the shotgun appellant used during the altercation. Officer White specifically stated he collected the gun from the kitchen table after appellant directed him to it and indicated it was the weapon that was fired during the altercation. Moreover, he testified that upon locating the gun, he secured it in a box with plastic ties, sealed the edges of the box with evidence tape, marked the box and placed it in an evidence room until it was sent to the crime lab for analysis. Officer White identified the firearm introduced into evidence at trial as the same weapon he collected from the crime scene on the night in question. He further indicated it was in the same condition, except for dirt having been removed and the presence of residual black fingerprinting powder.

Despite appellant's argument to the contrary, the fact the state failed to call crime lab personnel at trial to testify as to the tests performed on the gun does not affect our analysis. The operability of the gun was not in question at trial, as appellant himself admitted having discharged the gun during the altercation and thereafter telling Little, "I shot you." Further, numerous witnesses testified as to hearing the sound of the gun as it was fired, and Little's physician testified regarding the nature of Little's wound as resulting f[ro]m a gunshot. Accordingly, we find sufficient evidence was presented at trial to establish the chain of custody of the gun, along with its operability. Any remaining questions concerning the tests crime lab personnel performed on the gun were questions affecting the weight to be given the evidence rather than its admissibility.

(*Id.,* pp. 4-5).

The state appellate court's determination that there was "sufficient evidence ... to establish the chain of custody of the gun, along with its operability," was based on a reasonable determination of the facts in light of the evidence presented at trial. Petitioner has insinuated that police altered or tampered with the shotgun while it was at the crime lab. However, as the Ohio Court of Appeals pointed out, the evidence

establishes that the shotgun was returned from the crime lab in the same basic condition; the only differences were that residual black fingerprinting powder was "all over it" and dirt and grass had been removed from the gun barrel so that it could be test fired.  (*See* Doc. 13, Trial Tr. 191, 198).  As the Ohio court concluded, these differences, which reflected the tests that were performed on the firearm by crime lab personnel, did not cast doubt on the chain of custody, and only concerned questions affecting the weight to be given the evidence.

In any event, even assuming that additional testimony should have been introduced by the State regarding the chain of custody when the shotgun was at the crime lab for testing, there is no evidence in the record to suggest, as required under the second prong of the *Strickland* test, that the result of the trial would have been different if petitioner's trial counsel had objected to the admission of the shotgun on that ground.  Petitioner's trial counsel effectively cross-examined Officer White, as well as Officer Wetzel, about the condition of the shotgun when it was found at the scene on petitioner's kitchen table.  The jury, therefore, knew that when the gun was recovered from the scene, it was broken with a piece of the stock missing and with "grass and dirt and debris sticking out the barrel of the gun."  (*Id.,* Trial Tr. 140-41, 189).  Petitioner has not demonstrated that any objection to the admission of the shotgun based on the chain of custody would have been successful, or would have resulted in the admission of any additional evidence about the firearm's condition that would have favored the defense theories of accidental shooting or self-defense.

Finally, because petitioner has not shown that any of counsel's individual errors amounted to ineffective assistance, his claim of "cumulative error" lacks merit.  *See, e.g., Williams v. Anderson,* 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005) ("constitutional errors that would not individually support habeas relief can[not] be cumulated to support habeas relief"), *cert. denied,* 549 U.S. 1027 (2006); *see also Scott,* 302 F.3d at 607 (citing *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir.), *corrected on denial of rehearing*, 307 F.3d 459 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003)).

Accordingly, in sum, the Court concludes that petitioner is not entitled to habeas relief based on the merits of the ineffective assistance of trial counsel claims alleged in Grounds One and Eight of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Two of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[10] A certificate of appealability also should not issue with respect to petitioner's remaining claims alleged in Grounds One and Three through Eight of the petition, which have been addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: <u>July 7, 2010</u>              <u>s/ J. Gregory Wehrman</u>

   cbc                         J. Gregory Wehrman

                              United States Magistrate Judge

C:\DATA\2010\july\08-716denypet.waiv-OhCtApp.newtrialmtn-brady-youngblood.reopening-noncog.iaac.iac.wpd

---

[10]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in Ground Two. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION
_____

Gary Charles Rigdon,
     Petitioner

     vs                          Case No. 1:08cv716
                                   (Dlott, C.J.; Wehrman, M.J.)

Ohio Adult Parole Authority,
     Respondent

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).